**ALLSTATE INSURANCE COMPANY,**
**as subrogee of Robert and Lisa**
**Pierce, Plaintiff,**

v.

**WESTINGHOUSE ELECTRIC**
**CORPORATION,**
**Defendant.**

**No. 99 C 207.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 27, 1999.

William Sven Grotefeld, Mark Stephen Grotefeld, Grotefeld & Denenberg, L.L.C., Chicago, IL, for Plaintiff.

Michael J. O'Rourke, Andrew Neal Levine, Joel Lee Lipman, O'Rourke, McCloskey & Moody, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

KENNELLY, District Judge.

On September 1, 1995, a fire took place at the home of Robert and Lisa Pierce in Tilton, Illinois, located in Vermilion County near Danville. The Pierces made a claim with their property insurer, plaintiff Allstate Insurance Company, whose headquarters are in Cook County, Illinois. Allstate paid the Pierces $89,762.01 on the claim and became subrogated to the Pierces' rights. After investigating, Allstate came to the conclusion that the fire had been caused by arcing that occurred in an electric cable within the walls of the Pierces' home and that this should have been detected by a ground fault circuit interrupter (GFCI) manufactured by Westinghouse that had been installed in the home. According to Allstate, if the GFCI had worked properly, it would have shut down the electrical current and stopped the arcing, thus preventing the fire. Allstate claims that this did not happen because the GFCI was defective; it contends that Westinghouse improperly designed or manufactured the GFCI and thus should be held liable for the amounts that Allstate had to pay to the Pierces.

On December 14, 1998, Allstate filed this lawsuit in the Circuit Court of Cook County against Westinghouse Electric Corporation, a Pennsylvania corporation. Its complaint includes two claims: Count 1 alleges strict product liability; Count 2 alleges negligence. Westinghouse removed the case to this Court on January 14, 1999. Because our jurisdiction is based on diversity of citizenship, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), state substantive law governs. The parties agree that Illinois law applies.

Westinghouse has moved to dismiss Count 1, the product liability claim, arguing that it is barred by the statute of limitations. Westinghouse says that the applicable statute of limitations is supplied by 735 ILCS 5/13–213(d), which it reads as imposing a two year limitations period; it argues that because the injury in this case was caused by a sudden and traumatic event, the claim accrued at the time of the injury. Allstate argues that the applicable statute of limitations is 735 ILCS 5/13–205, which sets a limitations period of five years.

Section 13–205 provides that actions "to recover damages for an injury done to property, real or personal" are to be commenced within five years after the cause of action accrues. Section 13–213 provides, in relevant part, as follows:

§ 13–213. Product Liability; statute of repose.

. . .

(b) Subject to the provisions of subsections (c) and (d) no product liability

action based on any theory or doctrine shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly has warranted or promised the product for a longer period and the action is brought within that period.

. . .

(d) Notwithstanding the provisions of subsection (b) and paragraph (2) of subsection (c) if the injury complained of occurs within any of the periods provided by subsection (b) and paragraph (2) of subsection (c), the plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury, death or property damage, but in no event shall such action be brought more than 8 years after the date on which such personal injury, death or property damage occurred . . . .

735 ILCS 5/13–213(b) & (d).

Westinghouse's argument that 13–213(d) provides the limitations period is premised on two decisions by the First District of the Illinois Appellate Court, *Calumet Country Club v. Roberts Environmental Control Corp.*, 136 Ill.App.3d 610, 91 Ill. Dec. 267, 483 N.E.2d 613 (1st Dist.1985), and *McLeish v. Sony Corp. of America,* 152 Ill.App.3d 628, 105 Ill.Dec. 648, 504 N.E.2d 933 (1st Dist.1987). In *Calumet Country Club,* the defendant installed, in November 1980, an allegedly faulty connection between a municipal water supply pipe and the water supply pipe of the plaintiff's main clubhouse. The connection failed in June 1981, causing flooding and property damage. In September 1983, the plaintiff sued to recover its losses. One of its claims was a product liability claim, which the defendant argued was barred by 13–213(d) because it had not been brought within two years of the plaintiff's injury. The plaintiff argued that 13–213(d) was not a statute of limitations but rather was a provision that tacked an additional period of time onto the statute of repose for product liability actions set forth in 13–213(b). The court disagreed, stating that 13–213(d) "clearly sets forth a two-year limitations period based upon a plaintiff's discovery of his cause of action." *Calumet Country Club,* 136 Ill.App.3d at 614, 91 Ill.Dec. 267, 483 N.E.2d at 616. Because the plaintiff had failed to bring suit within two years of its injury, its product liability claim was time-barred. *Id.*

In *McLeish,* the plaintiffs' home was damaged by a fire that they claimed was caused by a faulty Sony television set. Just over two years after the fire, the plaintiffs sued Sony, alleging negligence and strict product liability. Relying on *Calumet Country Club,* Sony contended that the product liability claim was barred by 13–213(d). The court agreed, reaffirming *Calumet Country Club* and stating that to do otherwise would be to "ignore[ ] the two-year limitation expressly set forth in section 13–213(d)." *McLeish,* 152 Ill. App.3d at 630, 105 Ill.Dec. 648, 504 N.E.2d at 935.

Directly contrary to *Calumet Country Club* and *McLeish* is the decision of the Second District of the Illinois Appellate Court in *American Family Insurance Co. v. Village Pontiac–GMC, Inc.,* 182 Ill. App.3d 385, 131 Ill.Dec. 484, 538 N.E.2d 859 (2d Dist.1989), which neither party in the present case cited. The plaintiff in *American Family* had paid an insurance claim for damage to a home caused by a fire that began in an automobile manufactured and sold by the defendants and then, subrogated to the homeowner's rights, sued the defendants alleging negligence, breach of warranty, and strict product liability. The lawsuit was filed just short of five years after the fire. The plaintiff

argued that the governing statute of limitations was the five year period in 13–205 for actions alleging property damage; the defendant, relying on *McLeish* and *Calumet Country Club*, argued that the governing statute was the two year period found in 13–213(d). After an extended analysis of 13–205 and 13–213, the court in *American Family* concluded that the First District had misread 13–213. The Second District held that 13–213 does not provide the limitations period generally applicable to product liability actions but rather sets forth, in 13–213(b), a statute of repose that serves as an overlay to the limitations period supplied by other statutes, such as 13–205. The court read 13–213(d) as providing an exception for cases in which the injury occurred within 13–213(b)'s period of repose and the plaintiff filed suit outside the repose period but within two years of discovery of the injury, and not as providing the basic limitations period for product liability cases. *American Family*, 182 Ill. App.3d at 388–89, 131 Ill.Dec. 484, 538 N.E.2d at 861–62.[1]

■ Because the Illinois Supreme Court has not directly resolved the conflict between the First and Second Districts, this Court must decide which of these competing interpretations of 13–213(b) to apply. In this regard, the Court has a feeling of "déjà vu all over again," as it takes the Court back to a debate that began when it had the privilege of serving as law clerk to United States District Judge Prentice H. Marshall. The debate involves how a district judge sitting in diversity jurisdiction is to apply state law when the state's highest court has not spoken and its appellate courts are in conflict. Judge Marshall held, in *Kelly v. Stratton*, 552 F.Supp. 641, 644–45 (N.D.Ill.1982), and *Roberts v. Western–Southern Life Insurance Co.*, 568 F.Supp. 536, 539–45 (N.D.Ill.1983), that a district court must predict how the state supreme court would resolve the conflict and rule accordingly. By contrast, Judge

Milton Shadur held, in *Abbott Laboratories v. Granite State Insurance Co.*, 573 F.Supp. 193, 196–99 (N.D.Ill.1983) and other decisions both before and since, that a district court sitting in a diversity case that would have arisen in the First District of the Illinois Appellate Court had the case been brought in state court (as is the case here) must apply the law in the same manner as would a state trial court judge within the First District—in other words, the federal court judge must follow the decisional law of the First District where such law exists. Having observed the debate seventeen years ago, the Court has no particular desire to rehash the point-counterpoint here, except to note that the debate continues even today. *Compare Systemax, Inc. v. Schoff*, 972 F.Supp. 439, 441–43 (N.D.Ill.1997) (Shadur, J.) (revisiting the debate and reaffirming the *Abbott Laboratories* approach) *with, e.g., Applied Micro, Inc. v. SJI Fulfillment, Inc.*, 941 F.Supp. 750, 755–56 (N.D.Ill.1996) (Castillo, J.) (following Judge Marshall's approach) *and Murry v. Sheahan*, 991 F.Supp. 1052, 1053–54 & 1054 n. 4 (N.D.Ill. 1998) (Levin, M.J.). The Seventh Circuit has never sought to intervene in the debate, though less than two weeks ago, Chief Judge Posner suggested that the Seventh Circuit should "put the contending district judges out of their misery" and resolve the conflict, indicating that in his view the proper resolution is that all federal courts applying state law on unresolved issues must follow the state supreme court-predictive approach. *Outsource International, Inc. v. Barton*, 192 F.3d 662, 673–75 (7th Cir.1999) (Posner, C.J., dissenting).

This Court believes that Judge Marshall had it right. The Seventh Circuit has repeatedly made it clear that *it* will follow the state supreme court-predictive approach in this type of situation. *See, e.g., Allen v. Transamerica Insurance Co.*, 128

---

1. The court in *American Family* went on to hold that 13–213(d)'s exception applies only where the injury itself was not immediately discoverable. This aspect of *American Family* was overruled in *Davis v. Toshiba Machine Co.*, 186 Ill.2d 181, 237 Ill.Dec. 769, 710 N.E.2d 399 (1999).

F.3d 462, 466 (7th Cir.1997). That being the case, it makes no sense (and, in the long run, it does the parties no good) for this Court to do anything differently. If the Seventh Circuit is going to follow the Illinois Supreme Court-predictive approach, this Court should do the same, even if to do so requires the Court to reject the expressed views of (in this case) the First District of the Illinois Appellate Court. *See Welge v. Planters Lifesavers Co.*, 17 F.3d 209, 213 (7th Cir.1994) ("obviously when state courts of the same level reach opposite conclusions, a federal court in diversity case is not bound to follow either.")

 On to the merits. Though the Illinois Supreme Court has not had to address the issue we face here, we do have some clues regarding how it would rule. In *Davis v. Toshiba Machine Co.*, 186 Ill.2d 181, ——, 237 Ill.Dec. 769, 710 N.E.2d 399, 401 (1999), the court stated that 13–213(d) "creates an exception to the 10–year repose period found in subsection (b) and allows a plaintiff to bring an action within two years from when she knew or should have known of her injury, even though the 10–year repose period has expired in the meantime." This is consistent with *American Family's* reading of 13–213(d) and inconsistent with *Calumet Country Club's* and *McLeish's* reading of that section as setting forth its own independent statute of limitations for product liability actions. Moreover, *Calumet Country Club* and *McLeish* are fundamentally inconsistent with the well known principle, applied in Illinois as elsewhere, that a statute must be read, where possible, to give meaning to all of its terms. *E.g., In re County Collector of Kane County*, 132 Ill.2d 64, 72, 138 Ill.Dec. 138, 547 N.E.2d 107, 110 (1989). Section 13–213(b) clearly contemplates reference to *some other statute* as supplying the applicable limitations period when it says that no strict product liability action may be commenced "except within the applicable limitations period," and then (and only then) applies a statute of repose as an overlay. 735 ILCS 5/13–213(b). *Calumet Country Club* and *McLe-*

*ish* impermissibly read this provision out of 13–213(b). For these reasons, we believe that the Illinois Supreme Court would follow, and thus we adopt here, *American Family's* reading of 13–213(b) & (d) on this point. *See Edward Hines Lumber Co. v. Vulcan Materials Co.*, 669 F.Supp. 854, 857 (N.D.Ill.1987) (Aspen, J.) (concluding that 13–213 "did nothing to alter the existing limitations periods for different types of injuries" but rather "merely creates a procedural overlay to be grafted on to existing limitations statutes depending on the nature of the injury caused by the allegedly defective product"); *Lurzer v. AlliedSignal, Inc.*, No. 96 C 3845, 1998 WL 102637, at *3 (N.D.Ill. Feb. 27, 1998) (Manning, J.).

We must therefore look outside of 13–213 for the limitations period that applies in this case. As Allstate argues, the applicable statute is 735 ILCS 5/13–205, which sets a five year limitations period for property damage actions. Allstate's suit was brought within this period. We must then look to the period of repose set forth in 735 ILCS 5/13–213(b) to see if it cuts off Allstate's right to bring this action. Under the pleadings in their current state, however, there is no basis to say (and indeed Westinghouse does not argue) that this action was brought either more than twelve years after the date of first sale of the GFCI to any person or entity or more than ten years after the first sale to its initial user. Because there is no basis to conclude that 13–213(b) would bar this action, 13–213(d), which under *Davis* provides an exception to the period of repose in 13–213(b), does not even come into play.

For these reasons, the Court denies Westinghouse's motion to dismiss. This case was previously referred to Magistrate Judge Schenkier to conduct a settlement conference. The Court understands that Judge Schenkier has set the case for a status hearing on September 30, 1999 and anticipates setting a settlement conference date at that time. The case is set for a

further status hearing before this Court on Monday, November 8, 1999 at 9:30 a.m.